**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

EDDIE C. DAVIS, JR.,

       Petitioner,

v.                                     Case No. 3:15-cv-314-J-32JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I.   Status

       Petitioner Eddie C. Davis, Jr., an inmate of the Florida penal system, initiated this action by filing a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. <u>See</u> Doc. 1. Davis is proceeding on an Amended Petition and Supplemental Claims. <u>See</u> Docs. 11, 27 (Petition). Davis challenges a 2011 state court (Duval County, Florida) open plea of guilty and resulting judgment of conviction for possession of a firearm by a convicted felon, aggravated battery with a deadly weapon, and resisting an officer without violence to his or her person.  Respondents have responded. <u>See</u> Docs. 35 (Resp.), 37 (Supp. Resp.).[1] Davis has replied. <u>See</u> Docs. 38, 41. This case is ripe for review.

_____

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex." Respondents also rely on the Response Exhibits in their Supplemental Response.

## II. **Governing Legal Principles**

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

3

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. See

id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill,474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable

8

professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. <u>Analysis</u>

### A. Ground One

Davis raises three sub-claims premised upon allegations of trial court error that, according to him, resulted in his guilty pleas being involuntary. <u>See</u> Doc. 11 at 4-8. In Sub-Claim One, Davis alleges that the trial judge "impermissibly interjected herself into the proceeding and the plea negotiation[s]" by allowing Davis' trial attorney to waive Davis' right to a speedy trial and by interfering with the discovery process. <u>Id.</u> at 4-5. In Sub-Claim Two, Davis argues that the trial court erred in failing to grant his request for conflict-free counsel or hold a genuine <u>Nelson</u>[5] hearing. <u>Id.</u> at 6. In Sub-Claim Three, Davis contends that the trial court erred in accepting his pleas when "it was clear that [Davis] was on verge of [a] psychological collapse and verbalized suicide thoughts." <u>Id.</u> at 8

Davis raised these claims in his initial motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850. Resp. Ex. F at 5-10. The trial court denied these claims, finding in pertinent part:

---

[5] <u>Nelson v. State</u>, 274 So. 2d 256 (Fla. 4th DCA 1973).

9

Claims alleging trial court error are "not cognizable in a motion for postconviction relief." Swanson v. State, 984 So. 2d 629, 629 (Fla. 1st DCA 2008) (citing Hodges v. State, 885 So. 2d 338, 366 (Fla. 2004), and Gorham v. State, 521 So. 2d 1067, 1070 (Fla. 1988)). See Johnson v. State, 985 So. 2d 1215, 1215 (Fla. 1st DCA 2008). Specifically, such claims should be raised on direct appeal. Henry v. State, 933 So. 2d 28, 29 (Fla. 2d DCA 2006) (citing Sampson v. State, 845 So. 2d 271, 272 (Fla. 2d DCA 2003)). Stated differently, "[a] claim of trial court error generally can be raised on direct appeal but not in a rule 3.850 motion . . ." Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001) (citations omitted). Therefore, because all three of the instant claims seek to argue error by the trial judge, such claims are procedurally barred, and Defendant may not raise these arguments in a rule 3.850 motion.

Furthermore, Defendant's allegations, cloaked as trial court error, all seek to reach the validity of his plea. However, Defendant previously challenged the validity and voluntariness of his plea through his timely-filed pro se construed Motion to Withdraw Plea and his Motion to Withdraw Plea of Guilty, which, as discussed supra, were ultimately deemed to be without merit and the Court denied them. The First DCA's affirmance of Defendant's judgments and sentences included a review of the legality and the voluntariness of Defendant's plea, plea agreement, and sentences. Fla. R. App. P. 9.140(b)(2)(A)(ii) (2007) (stating defendant who filed motion to withdraw plea preserves that issue for appeal and may raise it on appeal). As such, the issues of an involuntary plea raised in this ground for relief have already been addressed on appeal. See Miller v. State, 926 So. 2d 1243, 1260 (Fla. 2006) ("[A] claim that could and should have been raised on appeal is procedurally barred.") Therefore, the previous denial of these claims constitutes the law of the case. Raley v. State, 675 So. 2d 170, 173-74 (Fla. 5th DCA 1996).

To the extent Defendant seeks to argue reversible error by the trial court as to construed sub-claim two, this Court notes that, on November 4, 2010, according to the Clerk's Online Docket, a "Nelson inquiry [was] held in full," and the Court concluded "public defender found to be effective." Thus, the trial judge did conduct the very hearing

which Defendant alleges the judge did not. Therefore, this argument refuted by the record is denied.

As to construed sub-claim three, to the extent Defendant may argue fundamental error or manifest injustice with respect to his sound mind or ability to understand his plea, this Court notes he affirmed to the Court under oath during his plea hearing that he was not under the influence of any substance or mental condition that would affect his ability to understand. He also signed his plea agreement and provided the following written testimony to the trial court: "I am not under the influence of any substance, drug, or condition (physical, mental, or emotional), which interferes with my appreciation of the entire plea agreement into which I am entering and all consequences thereof." Defendant may not now seek to go behind this sworn testimony in the instant motion seeking postconviction relief and now allege he was "on the verge of a psychological collapse." See Stano v. State, 520 So. 2d 278, 280 (Fla. 1988); Bir v. State, 493 So. 2d 55, 56 (Fla. 1st DCA 1986); Dean v. State, 580 So. 2d 808, 810 (Fla. 3d DCA 1991); see also Iacono v. State, 930 So. 2d 829, 831 (Fla. 4th DCA 2006). Therefore, this Court declines to further address the merits of Defendant's Ground One and these three arguments are denied.

Resp. Ex. G at 132-35 (record citations omitted). The First DCA issued a written opinion affirming the trial court's denial of Davis' initial Rule 3.850 motion, finding in relevant part:

The order on appeal is thoroughly detailed and supports each of the circuit court's determinations with either legal authority showing that the ground for relief is procedurally barred or legally meritless, or with specifically referenced portions of the record-attached as exhibits A through Q-which contradict Mr. Davis' allegations of fact regarding his plea and the effectiveness of defense counsel's assistance. Mr. Davis' rearrangement of several of the same arguments he presented at the trial level, with no reference to any error or insufficiency in the circuit court's order, fails to establish any error on appeal.

Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[6]

After Davis entered his open pleas of guilty, he filed a pro se motion to withdraw his plea pursuant to Florida Rule of Criminal Procedure 3.170(f), alleging that his plea was involuntary because he was not fully informed at the time of his plea and did not have adequate time to prepare for trial. Resp. Ex. A at 43. The trial court appointed conflict-free counsel who adopted Davis' pro se motion to withdraw plea and filed a similar Rule 3.170(f) motion on Davis' behalf. Id. at 44-45. The trial court conducted a hearing on the Rule 3.170(f) motions where it considered testimony from Davis and Davis' trial attorney at the time of his pleas. Resp. Ex. B at 173-229. Thereafter, the trial court entered an order denying Davis' Rule 3.170(f) motion, explaining that it "reviewed the Motion, Defendant's written plea form and the transcript of Defendant's Plea Colloquy; heard the testimony of Defendant; observed his demeanor and evaluated his credibility and relied on those observations and evaluations in reaching the following conclusions; heard the arguments of counsel and , reviewed the relevant rules, statutes and case law." Resp. Ex. A at 62-63.

_____

[6] Respondents appear to waive any argument that Davis' claims of trial court error are procedurally defaulted. See Coleman, 501 U.S. at 729-30 (A procedural default may result from non-compliance with state procedural requirements); see also Teffeteller v. State, 734 So. 2d 1009, 1016 (Fla. 1999) (holding substantive claims procedurally barred because they could have been raised on direct appeal); Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").

Following sentencing, Davis filed a second motion to withdraw plea pursuant to Rule 3.170(l). Resp. Ex. A at 107-19. The trial court summarily denied the Rule 3.170(l) motion for the same reasons as previously explained. Id. at 120-21. During his direct appeal, Davis argued that the trial court abused its discretion in denying his motions to withdraw plea and erred in finding that his plea was voluntarily entered. Resp. Ex. C. The First DCA rejected Davis' argument and per curiam affirmed Davis' judgment and sentences without a written opinion. Resp. Ex. E.

Davis' plea waives a multitude of federal constitutional rights, including the right to a jury trial, the right to a speedy trial, and the right to require the state to prove the crime beyond a reasonable doubt. Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); Tiemens v. United States, 724 F.2d 928, 929 (11th Cir.1984) ("[A] guilty plea waives all nonjurisdictional defects occurring prior to the time of the plea, including violations of the defendant's rights to a speedy trial and due process."). Upon review of Davis' plea colloquy (Resp. Ex. A at 131-67), the hearing on Davis' Rule 3.170(f) motion (Resp. Ex. B at 173-230), and given the totality of the facts and circumstances surrounding Davis' open plea of guilty, the Court finds that the state court's adjudication of the trial court error allegations raised in Ground One, Sub-Claims One, Two and Three were neither contrary to, nor an unreasonable application of clearly established federal law, and did not result from an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. As such, these claims are without merit.

**B. Ground Two**

Ground Two consists of ten sub-claims premised upon allegations of ineffective assistance of counsel in which Davis again challenges the voluntariness of his plea. Doc. 11 at 9-24. Davis raised these ten sub-claims in his initial Rule 3.850 motion. See generally Resp. Ex. F. In denying these claims of ineffective assistance of counsel, the trial court noted the two-prong Strickland test and recognized the nuances of the prejudice prong analysis in the context of a guilty plea. Resp. Ex. G at 13-36. The trial court pointed out that all of Davis' sub-claims of ineffective assistance of counsel challenged the voluntary nature of his pleas of guilty. Thus, the trial court collectively addressed Davis' ten sub-claims of ineffectiveness of counsel as follows:

> In Defendant's ten instant allegations, he challenges the voluntariness of his plea by arguing that counsel's ineffectiveness led him to enter a guilty plea. As discussed supra, the trial court, as well as the First DCA, have previously examined the voluntariness of Defendant's plea and did not allow him to withdraw it. As such, Defendant's instant challenges to his plea have previously been addressed. See Miller, 926 So. 2d at 1260; Raley, 675 So. 2d at 173-74. Furthermore, this Court finds Defendant is attempting to couch this claim in terms of ineffective assistance of trial counsel. Defendant may not seek to avoid the procedural bars of challenging his plea by couching his allegations in terms of ineffective assistance of counsel. See Arbelaez v. State, 775 So. 2d 909 (Fla. 2000); Cherzy v. State, 659 So. 2d 1069 (Fla. 1995).

> In support thereof, this Court points to the record where the Court held a hearing on Defendant's Motions to Withdraw Plea, during which Defendant's trial counsel, Mr. Nathan Carter, testified. Mr. Carter testified he has

14

handled hundreds of criminal cases, particularly in the repeat offender division, throughout his career as an assistant public defender. Counsel testified about his and Defendant's tumultuous attorney-client relationship. Counsel also testified about why he undertook the actions he did during his representation of Defendant, and why he offered the advice he did to Defendant. Most importantly, counsel testified that he attempted to maintain contact and communication as best he could with Defendant, but Defendant refused to assist him in his representation and Defendant often acted in a belligerent, uncooperative manner. Because Mr. Carter is an attorney who has represented hundreds of criminal defendants throughout his career as an assistant public defender, this Court specifically finds his testimony to be both more credible and more persuasive than Defendant's instant allegations and his testimony given during the February 10, 2011 hearing. See Laramore v. State, 699 So. 2d 846, 846-47 (Fla. 4th DCA 1997).

Resp. Ex. G at 130 (record citations omitted). Thereafter, in an abundance of caution, the trial court addressed each sub-claim on the merits.

Davis' solemn declarations in court carry a strong presumption of truth. Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that defendants who make statements under oath at a plea colloquy bear a heavy burden to show his statements were false) (quotation and citation omitted). Thus, Davis' representations at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74; see also Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (recognizing that the record of the plea proceedings may contradict any subsequent claim that counsel's representation was deficient). Considering the difficult barrier Davis must overcome, the Court considers each of Davis' sub-claims in turn below. In doing so, the

15

Court finds that Davis' "subsequent presentation of conclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Allison, 431 U.S. at 74.

### Sub-Claim One

Davis alleges that his trial counsel was ineffective for failing to notify the trial court that his representation presented a clear conflict of interest. Doc. 11 at 9. Davis raised this claim in his initial Rule 3.850 motion. Resp. Ex. F at 12. The trial court denied the claim, finding in relevant part:

> This Court finds Defendant has failed to establish he suffered prejudice. First, as Defendant admits in his instant Motion, he wrote the trial judge two letters discussing his discourse with counsel and that there existed a conflict of interest with counsel. As discussed above, Defendant also filed one pro se letter on November 4, 2010, wherein Defendant explained why he believed his attorney was ineffective. On the very same day, the trial court conducted a Nelson inquiry to address Defendant's allegations. However, the trial judge declined to discharge counsel from representing Defendant.

> As discussed supra, shortly after Defendant pled guilty, counsel subsequently withdrew from his representation of Defendant and Defendant received the assistance of Ms. Abel, his new attorney from the Office of Regional Conflict Counsel. Ms. Abel filed a Motion to Withdraw Plea of Guilty prior to the imposition of Defendant's sentence and adopted Defendant's pro se letter filed on November 4, 2010, construed as a Motion to Withdraw Plea. The Court denied both motions after hearing testimony and argument on the matter during a lengthy hearing on February 10, 2011. In addition to the contents of his construed Motion filed on November 4, 2010, Defendant testified about the "clear and blatant conflict of interest" during the February 10, 2011 hearing. Because this issue of an alleged conflict of interest was previously addressed by the trial judge and considered by the First

> DCA on appeal, and Defendant was not permitted to
> withdraw his plea, Defendant has failed to establish the
> outcome of his proceedings would have been any different.
>
> Finally, Defendant testified under oath to the Court
> during his plea colloquy that he was satisfied with counsel's
> representation of him. He also provided written testimony
> of the same through his signed plea agreement. Defendant
> may not seek to go behind his previous sworn testimony and
> now allege that a conflict of interest existed and that,
> because of it, counsel was ineffective and that this Court
> should permit Defendant to withdraw his plea. <u>Stano</u>, 520
> So. 2d at 280; <u>Bir</u>, 493 So. 2d at 56; <u>Dean</u>, 580 So. 2d at 810;
> <u>see</u> <u>Iacono</u>, 930 So. 2d at 831. For these reasons, construed
> sub-claim one is denied.

Resp. Ex. G at 139-41 (record citations omitted). As described in detail above, the First

DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the

extent that the First DCA affirmed the trial court's denial on the merits, the Court

will address the claim in accordance with the deferential standard for federal court

review of state court adjudications.

A review of the trial court docket shows that on November 4, 2010, four days

before he entered his guilty pleas, the trial court conducted a <u>Nelson</u> inquiry and found

that trial counsel was providing effective representation. <u>See</u> <u>State v. Davis</u>, No. 16-

2009-CF-16440 (Fla. 4th Cir. Ct.). During his plea colloquy on November 8, 2010,

Davis testified that he was satisfied with trial counsel's representation and that trial

counsel answered all of his questions regarding his open plea of guilty. Resp. Ex. A at

163.

Further, at the hearing on Davis' motion to withdraw plea, Davis testified about

his alleged conflict with trial counsel. Resp. Ex. B at 173-89. Trial counsel also testified

to the difficult client-attorney relationship. Id. at 206-07. According to trial counsel, Davis refused to accept the significant evidence against him and the law surrounding his case. Id. at 207. Trial counsel stated that he explained the facts and procedural posture of the case to Davis each time they met. Id. According to Davis' trial attorney, once discovery and depositions were completed, he advised Davis that he felt Davis should go to trial on the aggravated assault charge, but explained to Davis that his chances of succeeding at trial on the possession of a firearm by a convicted felon charge were not good. Id. at 213. Davis' trial counsel further testified that Davis, after speaking with his mother, voluntarily chose to enter a plea on all counts as "[h]e wanted the matter resolved in its entirety." Id. at 214-15.

The trial court was aware of the difficult attorney-client relationship between Davis and trial counsel prior to and after the plea of guilty. Nevertheless, it found that Davis' decision to plea was voluntarily and knowingly made. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). This claim is denied.

### Sub-Claim Two

Davis claims that trial counsel was ineffective for misadvising Davis that he would receive a sentence of ten years if he pled guilty. Doc. 11 at 11. He asserts that but for counsel's error, he would not have pled guilty, but would have insisted on going

18

to trial. <u>Id.</u> Davis raised this claim in his initial Rule 3.850 motion. Resp. Ex. F at 17.
The trial court summarily denied this issue, finding in relevant part:

> In his second issue, Defendant contends counsel misadvised him that if he pled guilty, he would receive a specific sentence of ten years of incarceration. Specifically, Defendant argues that counsel misled, coerced, and tricked him into accepting a plea offer on June 3, 2010, which rendered his plea "involuntary" and "unintelligent." Defendant additionally argues counsel failed to advise him that the judge was not bound by the offer of ten years of incarceration. Had he known that he would not receive this sentence, Defendant contends he would not have pled guilty on June 3, 2010 and, instead, would have proceeded to trial.

> The record reflects that, with respect to the instant case, Defendant entered an open plea of guilty to the trial court, with no negotiation from the State regarding the sentence, on November 8, 2010. The court's official record contains no indication or documentation that Defendant entered a plea of guilty in the instant case on June 3, 2010. Rather, based on counsel's testimony at the motion to withdraw plea hearing held on February 10, 2011, it appears that on June 3, 2010, Defendant made an offer to the State of a negotiated disposition of ten years of incarceration in exchange for a plea of guilty, but the State did not accept Defendant's offer. Defendant's Exhibit U to the instant Motion confirms the same. That is, no plea agreement was reached between the parties for an offer and sentence of ten years of incarceration, as the agreement provided by Defendant is not complete and contains only Defendant's and counsel's signatures. Therefore, Defendant cannot demonstrate he suffered prejudice with respect to this allegation.

> Additionally, during the hearing held on February 10, 2011, Defendant's counsel testified about the advice he gave Defendant regarding Defendant's decision whether to proceed to trial or enter a plea of guilty, with respect to Defendant's plea on November 8, 2010. Essentially, counsel believed and advised Defendant that Defendant's case was weak on the Possession of a Firearm By a Convicted Felon count, but strong on the Aggravated Assault and

19

Aggravated Battery counts. Counsel stated that, after Defendant consulted with his mother on the telephone about his options and, after counsel consulted with Defendant at length about the November 8, 2010 plea agreement, Defendant independently made the decision to enter a plea to all three counts because "[h]e wanted the matter resolved in its entirety." This Court finds Mr. Carter's testimony both more credible and more persuasive than Defendant's testimony and allegations. See <u>Laramore</u>, 699 So. 2d at 846-47.

Moreover, on the date Defendant entered his guilty plea, November 8, 2010, Defendant testified under oath during his plea colloquy that no one had threatened him, coerced him, or made him any promises. Defendant also testified he was satisfied with counsel's representation. In addition, through his written plea agreement, which he signed, Defendant provided written testimony to the trial court: "I have freely and voluntarily entered my plea of guilty.... I have not been threatened, coerced, or intimidated by any person, including my attorney, in any way in order to get me to enter this plea." This Court finds Defendant may not now argue that counsel coerced him, made him promises, threatened him to enter his plea, or that he is displeased with counsel's representation of him when he testified to the contrary during his plea colloquy. Defendant's instant allegations are in direct contravention of his previous sworn testimony, and this Court will not condone perjury by granting Defendant relief on the instant arguments. See <u>Stano</u>, 520 So. 2d at 280; <u>Bir</u>, 493 So. 2d at 56; <u>Dean</u>, 580 So. 2d at 810. Therefore, based on the foregoing, this Court declines to further address the merits of the instant claim and it is denied.

Resp. Ex. G at 139-41 (record citations omitted). As described in detail above, the First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

During the hearing on Davis' motion to withdraw plea, trial counsel testified that in June 2010, Davis made an offer to the state that he would plead guilty in exchange for a ten-year term of incarceration. Resp. Ex. B at 209-10. Davis attached the written offer as an exhibit to his initial Rule 3.850 motion. Resp. Ex. F at 118.[7] Trial counsel explained that the victims were not agreeable to that proposed ten-year sentence, and thus, the state rejected the plea offer. Id. at 210. Thereafter, on November 8, 2010, Davis entered an open plea of guilty to the charges. Resp. Ex. A at 131. During his plea colloquy, Davis acknowledged that by pleading guilty as an HFO, he faced a maximum sentence of thirty years in prison. Id. at 160-61. Davis further testified that no one had threatened him, coerced him, or made him any promises for his pleas of guilty. Id. at 162. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). This claim is denied.

### *Sub-Claim Three*

Davis alleges that trial counsel was ineffective for misadvising Davis that he would not receive a Habitual Felony Offender sentence. Doc. 11 at 12. According to Davis, trial counsel's misadvice coerced Davis into entering a plea of guilty. Davis raised this claim in his initial Rule 3.850 motion. Resp. Ex. F at 17-20. The trial court

---

[7] Davis made his ten-year plea offer by executing a negotiated plea form signed by himself and his attorney. Resp. Ex. F at 118. The state did not sign the negotiated plea form. Id.

summarily denied the claim as follows:

> In his third construed sub-claim, Defendant argues counsel "misadvised and coerced Defendant into pleading guilty by informing him that he would not be adjudicated an habitual felony offender, but absent counsel [sic] error, Defendant would not have entered a guilty plea and would have insisted on going to trial." Defendant states that counsel told him if he pled guilty he would not be habitualized, but if he went to trial he would be habitualized. Because of this, Defendant argues, his plea was rendered involuntary. Defendant also alleges that, because the State did not timely file its notice of intent to classify him as an HFO prior to the entry of his plea as required by Ashley v. State, 614 So. 2d 486 (Fla. 1993), he is entitled to withdraw his plea.

> This Court finds the instant argument to be utterly without merit. First, on direct appeal, the First DCA previously addressed the issue of the voluntariness of Defendant's plea and the First DCA declined to allow Defendant to withdraw his plea when it affirmed the Court's denials of Defendant's previous requests to do so. This Court similarly declines to go behind the previous decisions and allow Defendant to withdraw his plea.

> Furthermore, at the immediate outset of Defendant's plea colloquy, the trial judge informed Defendant on the record that, as a habitual offender as to Counts One and Two, he faced a maximum sentence of thirty years in prison as to Count One and a maximum of thirty years in prison as to Count Two. If Defendant objected to being classified and sentenced as a habitual offender or had any questions about such, he was under oath and able to voice his concerns to the Court during his plea colloquy. Indeed, after the Court informed Defendant that he would be sentenced as an HFO, the judge asked Defendant if he had any further questions for his attorney or the court. Defendant did not ask his attorney or the court any further questions.

> Additionally, Defendant's trial counsel testified during the hearing to address Defendant's motions to withdraw plea. Counsel testified he advised Defendant "on multiple occasions" that Defendant faced a maximum

exposure of thirty years of incarceration as to each charge. This Court specifically finds Mr. Carter's testimony both more credible and more persuasive than Defendant's testimony and allegations. See Laramore, 699 So. 2d at 846-47. As to Defendant's claims that counsel coerced or misled him to enter his plea of guilty, this Court adopts its reasoning supra denying sub-claim two of Ground Two to deny this claim.

Regarding Defendant's claims that he is entitled to withdraw his plea because the State did not comply with Ashley by timely filing its notice of intent to classify him as an HFO before the entry of his plea of guilty, the record indicates otherwise. Indeed, the record demonstrates that, on January 28, 2010, nearly ten months before Defendant entered his plea, the State filed its Notice of Intent to Classify Defendant as [a] Habitual Felony Offender. As such, Defendant's contentions that the State violated Ashley's mandates are without merit. Defendant is not entitled to relief for any of the reasons alleged in this argument and construed sub-claim three is denied.

Resp. Ex. G at 141-43 (record citations omitted). As described in detail above, the First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

The record shows that on June 28, 2010, the state filed a notice of intent to classify Davis as an HFO. Resp. Ex. A at 15. A review of Davis' written ten-year plea offer that the state ultimately rejected indicates that Davis was aware of his HFO status as his plea offer included a stipulation to Davis' HFO eligibility. Resp. Ex. A at 118. Further, during his plea colloquy, Davis acknowledged that by entering an open plea of guilty as an HFO, he faced a maximum sentence of thirty years in prison. Resp.

Ex. A at 160-61. Davis further testified that no one threatened him, coerced him, or made him any promises for his pleas of guilty. Id. at 162. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). This claim is denied.

### Sub-Claim Four

Davis claims that trial counsel was ineffective for failing to pursue and investigate a possible insanity defense and move for a competency hearing before advising him to plead guilty. Doc. 11 at 14. Davis raised this claim in his initial Rule 3.850 motion. Resp. Ex. F at 20-23. In summarily denying this issue, the trial court found the following:

> In his fourth issue of Ground Two, Defendant contends that counsel "failed to pursue any investigation into possible insanity defense and move for a competency hearing before advising Defendant to plead guilty." Defendant further contends counsel should have presented defenses of intoxication and self-defense. In support thereof, Defendant states that when he was apprehended by law enforcement, he was "not in the right state of mind," "totally intoxicated (drunk)," "could hardly stand up," and "very unstable." Defendant contends that, consequently, his plea was involuntary.
>
> This Court will not address Defendant's allegations of an involuntary plea because, as discussed supra, this issue was previously addressed on appeal. Further, this Court finds that when Defendant pled guilty to the instant charges, he waived his right to require counsel to investigate or put forth any defense, including insanity. See

24

<u>Clift</u>, 43 So. 3d at 779 (citing <u>Davis</u>, 938 So. 2d at 557) (stating when a defendant pleads guilty, he waives his right to require counsel to investigate case). Defendant is not entitled to relief on this claim.

In addition, Defendant testified on the record that he was satisfied with counsel's representation of him and that he was not under the influence of any substance or affected by any mental condition. Defendant provided written testimony in his signed plea agreement specifying that "We [Defendant's counsel and Defendant] have fully discussed all aspects of this case, including all possible defenses to all charges, including self-defense and any defense based upon any disability, disease, insanity, or intoxication." Defendant may not go behind his previous sworn testimony and now make allegations to the contrary. <u>See</u> <u>Stano</u>, 520 So. 2d at 280; <u>Bir</u>, 493 So. 2d at 56; <u>Dean</u>, 580 So. 2d at 810.

Furthermore, Defendant's counsel's testimony during the hearing addressed Defendant's motions to withdraw plea, specifically his personal observations of Defendant at the time Defendant entered his plea. Counsel opined that Defendant did not appear to be under the influence of any substance, nor did Defendant appear to be suffering from any mental defect that would impair his ability to enter into a plea agreement. This Court specifically finds Mr. Carter's testimony both more credible and more persuasive than Defendant's testimony and allegations, and this Court declines to find merit in Defendant's contentions. <u>See</u> <u>Laramore</u>, 699 So. 2d at 846-47. Mr. Carter's experience working at the Public Defender's Office convinces this Court that he was not ineffective in his opinion and judgment that Defendant did not suffer from any mental defect, such to require psychological testing.

Finally, Defendant has failed to acknowledge that merely being intoxicated does not automatically render a person insane, such that the person could legally and meritoriously present an insanity defense. Indeed, Defendant has not met his postconviction burdens of proving that, had counsel investigated and requested insanity, intoxication, and/or self-defense, such investigation would have changed the outcome of his case and that requests for said defenses would have been

granted. <u>See</u> <u>Branch v. State</u>, 952 So. 2d 470, 476 (Fla. 2006). Similarly, Defendant has failed to prove that he did, in fact, suffer from a mental infirmity that rose to the level of insanity. <u>See</u> <u>Davis v. State</u>, 736 So. 2d 1156, 1159 (Fla. 1999) (holding postconviction relief not warranted on basis of "tenuous speculation"). In view of the above, as Defendant has failed to show counsel rendered deficient representation in this respect, construed sub-claim four is denied.

Resp. Ex. G at 143-45 (record citations omitted). As noted, the First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Defendant did not present any evidence to the state court, or otherwise, that he was in fact insane or involuntarily intoxicated at the time of the offenses such that these defenses would have been viable at trial. Further, the record refutes any claim that Davis was incompetent at the time of his plea or unable to understand the consequences of his plea. During the hearing on Davis' motion to withdraw plea, trial counsel testified that Davis did not appear to be suffering from any mental defect at the time of his plea. Resp. Ex. B at 216. Notably, trial counsel testified that Davis "knew exactly what he was [there] for, exactly what he was doing, exactly what he was entering a plea to, especially based upon [trial counsel's] advice as to how each case could turn out." <u>Id.</u> at 216-17.

Thus, upon a thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable

26

determination of the facts in light of the evidence presented to the state court. See 28

U.S.C. § 2254(d). This claim is denied.

### Sub-Claim Five

Davis contends that trial counsel was ineffective for erroneously advising Davis

that he would receive a long prison sentence, which misled, coerced, and threatened

Davis into pleading guilty. Doc. 11 at 15. Davis raised this claim in his initial Rule

3.850 motion. Resp. Ex. F at 23-25. The trial court summarily denied the claim, finding

in relevant part:

> In his fifth construed sub-claim, Defendant attacks the voluntariness of his plea by arguing that "counsel misled, coerced, and threatened Defendant into pleading guilty with erroneous advice and threats of a long prison sentence." In support thereof, Defendant states he filed a Motion to Withdraw Guilty Plea in the form of a pro se letter, pursuant to Florida Rule of Criminal Procedure 3.170(l), and counsel "refused to honor this request to file a motion to withdraw plea."[8]
>
> . . .
>
> This Court adopts its reasoning supra denying Defendant's claims of an involuntary plea and denying Defendant's allegations that counsel coerced or threatened him to enter a plea based upon alleged misadvice. . . . .

Resp. Ex. G at 145 (record citations omitted). As described in detail above, the First

DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the

extent that the First DCA affirmed the trial court's denial on the merits, the Court

---

[8] In his Rule 3.850 motion, Davis also claimed that counsel misled Davis to believe that he accepted a one-year plea offer. Resp. Ex. F at 23-25. Davis does not raise that claim in this case.

will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Davis' plea colloquy refutes his claims that his plea was coerced or involuntary. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). This claim is denied.

### *Sub-Claim Six and Ground Four*[9]

In Sub-Claim Six, Davis maintains that trial counsel was ineffective for failing to obtain police reports and interview reports that were inconsistent with witnesses' depositions. Doc. 11 at 17. He further alleges that the state committed a <u>Brady</u>[10] violation by withholding these exculpatory reports. <u>Id.</u> In Ground Four of the Petition, Davis alleges that the state withheld evidence and failed to comply with discovery requirements. Doc. 11 at 30. He further alleges that trial counsel conspired with the state and failed to request a <u>Richardson</u>[11] hearing. <u>Id.</u>

Davis raised these claims in his initial Rule 3.850 motion. Resp. Ex. F at 25-27. The trial court denied the claims, finding in pertinent part:

---

[9] In his Rule 3.850 motion, Davis raised these claims within the same sub-claim, and thus, the trial court addressed them at the same time. Resp. Ex. G at 146-49. Accordingly, the Court will address these claims together.

[10] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[11] <u>Richardson v. State</u>, 246 So. 2d 771 (Fla. 1971).

In his sixth construed sub-claim of Ground Two, Defendant argues that counsel failed to obtain police reports, field interview reports, and statements of the victims and witnesses, which contained inconsistent statements and could have been used as impeachment evidence. Defendant similarly argues that he did not have "constructive knowledge of police reports, discovery materials, FDLE reports or depositions." Defendant also states counsel should have requested a <u>Richardson</u> hearing with respect to the State's failure to disclose the inconsistencies between the police officers' depositions and their police reports. Defendant further alleges the State committed a <u>Brady</u> violation by failing to provide the Defense with such exculpatory evidence. In sum, throughout the three pages which encompass this argument, Defendant alleges there existed no evidence or testimony proving he committed the instant offenses and, specifically, counsel should have filed a motion to suppress or motion to dismiss the Possession of a Firearm By a Convicted Felon count.

As to Defendant's instant claims alleging counsel was ineffective, Defendant testified under oath at his plea hearing and acknowledged in his plea form that he was satisfied with counsel's representation of him. He may not seek to go behind his previous sworn testimony and now allege that counsel was ineffective for failing to investigate. <u>See</u> <u>Stano</u>, 520 So. 2d at 280; <u>Bir</u>, 493 So. 2d at 56; <u>Dean</u>, 580 So. 2d at 810. Most importantly, when Defendant pled guilty to the instant charges, he waived his right to require counsel to investigate or put forward a defense. <u>Clift</u>, 43 So. 3d at 779 (citing <u>Davis</u>, 938 So. 2d at 557).

Furthermore, Defendant raised these very grounds for relief related to discovery materials during his hearing addressing both of his motions to withdraw plea, which the trial judge ultimately denied. During the hearing, Defendant's counsel explained that Defendant erroneously believed the rules of disclosure of discovery imposed upon prosecutors place the same time restrictions upon defense

counsel in providing discovery to clients.[12] Counsel also testified that, despite Defendant's instant contentions, anytime he received any discovery from the State, he provided Defendant with it "as soon as I could." This Court finds Mr. Carter's testimony to be both more credible and more persuasive than Defendant's testimony and instant allegations. See Laramore, 699 So. 2d at 846-47.

To the extent Defendant appears to be attempting to challenge the sufficiency of the evidence against him by couching this claim in terms of counsel's investigation or representation of him, Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking postconviction relief. Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994). Indeed, the State presented the trial court with a detailed factual basis outlining Defendant's actions, which led to his conviction for each of the three instant offenses.[13] Therefore, had counsel filed a motion to suppress or a motion to dismiss the Possession of a Firearm By a Convicted Felon count, such a motion would have lacked merit and been denied. See Kormondy v. State, 983 So. 2d 418, 430 (Fla. 2007); Zakrzewski v. State, 866 So. 2d 688, 694 (Fla. 2003) (reasoning a postconviction defendant alleging ineffective assistance of trial counsel for failure to file motion to suppress holds burden of proving suppression will be granted) State v. Amal, 941 So. 2d 556, 558 (Fla. 3d DCA 2006) (quoting State v. McQuay, 403 So. 2d 566, 567-68 (Fla. 3d DCA 1981)) (discussing burden involved with respect to motion to dismiss).

As to Defendant's claims that counsel failed to

---

[12] Counsel's statement of the law is correct. Florida does not impose upon a defense attorney stringent time frames under which discovery materials must be shared with a client. See Fla. R. Crim. P. 3.220(b), (d) (2005).

[13] The state's factual basis provided that Davis "did go to the victim's house where he was in an altercation with the mother of his children and that altercation led to an altercation with her brother in which the victim in count two, Ken Lee, was stabbed with a knife." Resp. Ex. A at 164. Davis "then returned home and the police were called," and the police had to chase Davis down who did resist. Id. When Davis was apprehended, the police found a firearm in Davis' back pocket. Id.

request a <u>Richardson</u> hearing, this Court notes such a hearing is warranted only when the opposing party fails to disclose the name of a witness. <u>Richardson</u>, 246 So. 2d at 773 (stating discovery rules require State, "upon written request filed in the cause by the defendant, to furnish to the defendant a list of all witnesses known to the prosecuting attorney to have information which may be relevant to the offense charged, and to any defense of the person charged with respect thereto"). Additionally, a <u>Richardson</u> hearing is seemingly warranted only in the case of a jury trial; the <u>Richardson</u> court held that non-disclosure of a witness's name may prevent the non-disclosing party from presenting said witness during trial. <u>Id.</u> at 774-76.

In the instant case, first, Defendant did not proceed to trial. Rather, he entered a plea of guilty to the Court. <u>See id.</u> Thus, Defendant has failed to prove a <u>Richardson</u> hearing would have changed the outcome of his case, particularly because he pled guilty to the instant offenses. Second, despite Defendant's contentions, the State was not obligated to provide Defendant with the substance of the testimony of the police officers or the alleged inconsistencies in testimony.

In short, Defendant was not entitled to the evidence he seeks. <u>See Richardson</u>, 246 So. 2d at 773-74. Indeed, the State provided Defendant with several supplemental discovery exhibits throughout the pendency of the instant case, the first of which included the names of three police officers. Therefore, Defendant cannot prevail on this claim because, had counsel requested a <u>Richardson</u> hearing, such a request would have been fruitless and would have been denied. <u>See Branch</u>, 952 So. 2d at 476; <u>Smith v. State</u>, 192 So. 2d 346, 351 (Fla. 2d DCA 1966).

To the extent Defendant seeks to argue the State failed to provide him with copies of depositions and/or the like, this Court finds it is not the duty of the State to provide the Defense with free copies of discovery. The State "shall disclose to the defendant and permit the defendant to "inspect, copy, test, and photograph" such discovery materials. Fla. R. Crim. P. 3.220(b)(l). Moreover, "if [defendants] were to be declared indigent, it would be the County, not the State, under Rule 3.220(0), Florida Rules of

> Criminal Procedure which might be responsible for the costs
> the defendant incurred during the criminal prosecution."
> State v. Williams, 678 So. 2d 1356, 1358 n.1 (Fla. 3d DCA
> 1996). Defendant's allegations that the State failed to
> comply with Rule 3.220 are without merit. Based on the
> foregoing reasons, sub-claim six is denied.

Resp. Ex. G 146-49 (record citations omitted). As described in detail above, the First

DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the

extent that the First DCA affirmed the trial court's denial on the merits, the Court

will address these claims in accordance with the deferential standard for federal court

review of state court adjudications. In doing so, and upon thorough review of the record

and the applicable law, the Court concludes that the state court's decision to deny

Davis' claims was neither contrary to nor an unreasonable application of Strickland,

and it is not based on an unreasonable determination of the facts in light of the

evidence presented to the state court. See 28 U.S.C. § 2254(d). These claims are

denied.

### *Sub-Claim Seven*

Davis contends that trial counsel was ineffective for failing to adequately

investigate the facts of his case. Doc. 11 at 19. Davis raised this claim in his initial

Rule 3.850 motion. Resp. Ex. F at 28-31. The trial court summarily denied the claim,

finding in relevant part:

> In his seventh construed ground for relief, Defendant
> argues that counsel was ineffective because he failed to
> adequately investigate the facts of the case. Defendant
> argues that counsel's failure to investigate rendered his plea
> involuntary. Defendant also argues counsel failed to
> investigate self-defense and involuntary intoxication.

As to Defendant's allegation of counsel's failure to investigate the facts, for the reasons stated <u>supra</u> denying sub-claim six of Ground Two, this sub-claim is similarly denied. As to Defendant's claims that counsel failed to investigate his defenses of self-defense and involuntary intoxication, these claims are denied for the reasoning stated <u>supra</u> denying sub-claim four of Ground Two. With respect to Defendant's claim that he suffered from involuntary intoxication at the time of the offense and this defense would have prevailed, this Court notes there exists no evidence on the record, nor has Defendant provided any evidence in support thereof, that he acted in an "unstable, berserk, tore down drunk" manner because he was involuntarily intoxicated. Indeed, the record before this Court demonstrates that when law enforcement came in contact with Defendant, he had in his possession an open can of beer and a full can of beer, which leads to the inference that Defendant consumed the alcohol in the open can of beer on his accord. Therefore, had counsel raised such a defense, such a request would not have prevailed. <u>See</u> <u>Branch</u>, 952 So. 2d at 476. Because the arguments in this sub-claim do not entitle Defendant to relief, it is denied, and Defendant may not withdraw his plea.

Resp. Ex. G at 149 (record citations omitted). As described in detail above, the First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, and upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). This claim is denied.

### *Sub-Claim Eight*

Davis asserts that trial counsel was ineffective for coercing Davis into accepting a plea, so trial counsel could conceal his unpreparedness for trial. Doc. 11 at 20. Davis alleges that trial counsel's error rendered his plea involuntary. Id. Davis raised this claim in his initial Rule 3.850 motion. Resp. Ex. F at 31. The trial court denied the claim as follows:

> In his eighth construed ground for relief, Defendant contends that counsel "misled and coerced Defendant into accepting a plea of guilty in order to conceal his unpreparedness for trial which renders the guilty plea involuntary and unintelligently entered." Defendant also again takes issue with counsel's representation and preparation, including counsel's investigation; counsel's decision to move for a continuance without Defendant's consent, which waived Defendant's speedy trial rights; and counsel's participation in discovery. Finally, Defendant argues counsel "failed to advise Defendant that he has a right to confront the witnesses against him."

> Regarding Defendant's claim that counsel misled and coerced him to plead guilty, this Court adopts its reasoning supra denying sub-claim two of Ground Two. As to Defendant's claims that there existed an adversarial relationship between him and counsel and that counsel failed to file pre-trial motions, failed to participate in discovery, and failed to notice the trial court of a Brady violation, this Court adopts its reasoning supra denying sub-claims one, two, five, and six of Ground Two. As to Defendant's claim regarding his speedy trial rights, this Court adopts its reasoning infra denying sub-claim nine of Ground Two. Finally, regarding Defendant's last allegation that counsel was ineffective because counsel failed to advise Defendant he had a right to confront witnesses against him, Defendant may not go behind his sworn testimony during his plea colloquy when he testified he was satisfied with counsel's representation and that he had no further questions for counsel. Sub-claim eight is denied.

Resp. Ex. G at 150-51 (record citations omitted). The First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, and upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). This claim is denied.

### *Sub-Claim Nine*

Davis contends that trial counsel was ineffective for failing to file a motion for discharge or notice of expiration of speedy trial once Davis' speedy trial period expired. Doc. 11 at 22. According to Davis, he never waived his right to a speedy trial, and thus, his due process rights were violated by counsel's ineffectiveness.

Davis raised this claim in his initial Rule 3.850 motion. Resp. Ex. F at 35-38. In summarily denying the claim, the trial court found as follows:

> In his ninth argument alleging ineffective assistance of trial counsel, Defendant argues that counsel failed to adopt and file a "motion for discharge, notice of expiration of speedy trial. Where the speedy trial period had expired and Defendant had never waived or consented to waive his right to a speedy trial, and did in fact demanded [sic] a speedy trial." In support thereof, Defendant argues he never waived his speedy trial rights and he demanded a speedy trial on October 26, 2010, but counsel refused to adopt his motion. Defendant requests an immediate release because, he alleges, his speedy trial rights were violated.

35

A defendant's right to a speedy trial is explained as follows:

> Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (f), every person charged with a crime shall be brought to trial within 90 days of arrest if the crime charged is a misdemeanor, or **within 175 days of arrest if the crime charged is a felony.**

Fla. R. Crim. P. 3.191(a) (2005) (emphasis added). However, "[i]t is axiomatic under Florida law that a trial continuance granted at the request of the accused constitutes a waiver of the right to a speedy trial under rule 3.191." State v. Gibson, 783 So. 2d 1155, 1158 (Fla. 5th DCA 2001) (citations omitted). See Jackson v. State, 448 So. 2d 577, 577-78 (Fla. 5th DCA 1984) (stating pro se demand for speedy trial is trumped by attorney's request for continuance because "[w]hen a defendant charged with [a] crime has an attorney it is the responsibility of the attorney to know when the defense is ready or not ready for trial").

Defendant was arrested on December 24, 2009. Pursuant to rule 3.191, his speedy trial rights expired on June 17, 2010. He has failed to acknowledge, however, that when his counsel moved for a continuance on June 3, 2010, Defendant waived his speedy trial rights. Although Defendant avers that he never consented to a waiver of his speedy trial rights, pursuant to Jackson this argument is without merit and Defendant may not obtain relief on this basis. Indeed, based on the record, it appears counsel requested a continuance to adequately prepare Defendant's case. Specifically, counsel's testimony at the February 10, 2011 hearing indicates that on June 3, 2010, counsel believed Defendant sought to enter a plea of guilty to the charges at bar. Defendant cannot prevail on this claim for relief, and it is denied.

Resp. Ex. G at 151-52 (record citations omitted). The First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in

36

accordance with the deferential standard for federal court review of state court adjudications.

Davis' speedy trial expired on June 17, 2010; however, a review of the trial court docket shows that Davis moved for a continuance on June 3, 2010, thus, waiving his speedy trial rights. See Davis, No. 16-2009-CF-16440. Further, in June 2010, Davis made a ten-year plea offer to the state that was rejected, and in November 2010, Davis made the sole decision to enter a plea of guilty on all charges because he wanted to resolve the issues entirely. As such, Davis' actions demonstrate that he wanted to enter a plea to the charges at all times, and thus, he cannot demonstrate that but for trial counsel's waiver of speedy trial, Davis would not have pled guilty and would have proceeded to trial.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). This claim is denied.

### *Sub-Claim Ten*

Davis asserts that trial counsel was ineffective for failing to "sign in good faith on [Davis'] motion to disqualify trial judge." Doc. 11 at 23. Davis raised this claim of ineffective assistance of counsel in his initial Rule 3.850 motion. Resp. Ex. F at 39-41. The trial court summarily denied the claim, finding in pertinent part:

> Finally, Defendant argues his court-appointed conflict-free counsel, Ms. Abel, was ineffective because she

37

failed to adopt his Motion for Disqualification. Ethically, an attorney must refrain from filing motions without meritorious grounds. Smith, 192 So. 2d at 351. A trial judge's adverse rulings against one party do not constitute a sufficient ground for recusal. Gilliam v. State, 582 So. 2d 610, 611 (Fla. 1991). See Areizaga v. Spicer, 841 So. 2d 494 (Fla. 2d DCA 2003); Hastings v. State, 788 So. 2d 342 (Fla. 5th DCA 2001).

In the instant case, this Court has reviewed Defendant's Motion for Disqualification, as well as the trial court's June 1, 2011 Order, which struck that motion from the record because the allegations contained therein were legally insufficient. In light of the aforementioned case law, as well as the trial court's specific reasoning for striking Defendant's motion, this Court also finds that, pursuant to Gilliam, Defendant's allegations in his Motion for Disqualification were insufficient to cause a reasonably prudent person to fear that he or she would not receive a fair and impartial trial. See Parker v. State, 3 So. 3d 974, 982 (Fla. 2009). Therefore, counsel was not ineffective for failing to adopt that motion, because it had no merit and would not have been granted. See Smith, 192 So. 2d at 351; see also Branch, 952 So. 2d at 476. Sub-claim ten is denied.

Resp. Ex. G at 152-53 (record citations omitted). The First DCA issued a written opinion affirming the trial court's denial. Resp. Ex. I. To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Following his pleas of guilty, Davis filed a pro se motion for disqualification of the trial judge because the trial judge denied his motion to withdraw plea. Resp. Ex. G at 315. The trial court entered an order denying the motion for disqualification, finding that the motion was untimely because it was filed more than ten days after the trial court denied Davis' motion to withdraw plea. Id. at 320-21. The trial court

further found that despite the procedural bar, the motion for disqualification was without merit because "adverse rulings do not constitute the pervasive bias" needed for disqualification. Id. at 321. Because Davis' pro se motion for disqualification was without merit, trial counsel cannot be deficient for failing to adopt that pro se motion. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). This claim is denied.

**C. Ground Three**

In Ground Three, Davis raises three sub-claims. See Doc. 11 at 25-29. The Court addresses each sub-claim below.

### *Sub-Claim One*

Davis contends that he was denied a fair and impartial trial, in violation of his due process rights, because the Information was facially defective. Doc. 11 at 25. In support of this contention, Davis avers that the state did not have sworn testimony from a key material witness. Id.

Davis raised this claim in a petition for writ of habeas corpus filed in state court. Resp. Ex. O at 5. The trial court summarily denied the claim, finding in relevant part:

> First, Defendant contends he was denied due process of the law based upon "a charging instrument wholly omitting essential element to charge ...." Defendant states that because the State Attorney failed to ascertain sworn testimony from a material witness prior to filing a charging information against him, an essential element to the charge

was omitted and the trial court was divested of "subject-matter personam jurisdiction" to try and sentence him. Defendant argues that Officers I.R. Fields, J.M. Kirkland, and H.R. Bowers were not material witnesses. However, Defendant contends that, as to Count Two, because the State failed to ascertain a sworn statement from Officer Kirkland, the Information failed to invoke the trial court's jurisdiction. Defendant cites Florida Rule of Criminal Procedure 3.140(g), State v. Weinberg, 780 So. 2d 214 (Fla. 5th DCA 2001), and State v. Postell, 398 So. 2d 851 (Fla. 3d DCA 1981), in support of his contentions.

In Florida, an information charging the commission of a felony must be based upon the sworn testimony of a material witness to the charged felony. Fla. R. Crim. P. 3.140(g) (1993). Further, the material witness testimony required by this rule may be taken by a person other than the assistant state attorney and may be received and considered by the assistant state attorney prior to filing the information. State v. Hartung. 543 So. 2d 236, 237 (Fla. 5th DCA 1989).

Here, Defendant relies on State v. Weinberg, 780 So. 2d 214 (Fla. 5th DCA 2001), for the proposition that an arresting or investigating officer cannot be a material witness and that any information based upon the officer's sworn affidavit is defective. Such reliance is misplaced. The information in Weinberg was based solely on the investigating officer's sworn affidavit. Id. at 215. The appellate court determined that the investigating officer was not a material witness, but that "an investigating officer may be a material witness in some situations." Id. at 215-16. The investigating officer in Weinberg, however, was not a material witness because the officer merely "collected evidence." Id. at 215-16. Moreover, "[n]o objection to an information on the ground that it was not signed or verified, as herein provided, shall be entertained after the defendant pleads to the merits." Fla. R. Crim. P. 3.140(g).

As to the instant case, Defendant's challenge to the verification of the charging document is too late because he pled to the merits of the Information at his arraignment on January 28, 2010. See id. Second, despite Defendant's contentions, the requirement of sworn material witness

testimony is not an element to a crime it is merely a requirement placed upon the State prior to its filing of a charging document against a suspect. <u>See</u> Fla. R. Crim. P. 3.140(g). Thus, Defendant's argument that he was convicted of an uncharged crime because the State lacked sworn testimony from a material witness, which is an "essential element" of the offense, is without merit. Third, the record reflects that the State filed two charging documents against Defendant. First, on January 27, 2010, it filed its Information. This is the document which Defendant challenges. However, the State filed an Amended Information on February 3, 2010, to which he later pled guilty. Count One does not have an ascertainable victim; Count Two charged Aggravated Battery upon Kenneth Lee; and Count Three charged Resisting Officer Without Violence to His or Her Person upon Officer I.R. Fields.

Finally, as to the merits of Defendant's claims, his arguments alleging lack of testimony from a sworn material witness fail for two reasons. First, as to Count Two, in the State's first discovery exhibit filed on January 28, 2010, the State disclosed that it possessed the sworn statements of Kenneth Lee and Chiquita Arnold. Specifically, on January 21, 20l0, the State obtained a sworn statement from Mr. Kenneth Lee, the victim of the Aggravated Battery in Count Two. Defendant's attorney was provided a copy of it. An additional discovery exhibit demonstrates that on January 22, 2010, the State obtained a sworn statement from Ms. Chiquita Arnold, who, according to the Arrest and Booking Report, was present during the altercation and observed Defendant stab Mr. Lee with a pocket knife. The State provided Defendant's attorney with a copy of this latter statement. The sworn statements were ascertained from these two witnesses prior to the date the State filed its first Information against Defendant on January 27, 2010. This Court finds these two witnesses fit the definition of "material witnesses" within the meaning of Rule 3.l40(g): one witness is the victim of one of the instant offenses (Count Two), and the other witness observed Defendant committing the same offense.

Second, unlike the officer in <u>Weinberg</u>, the investigating and arresting officer here clearly qualifies as a material witness to Counts One and Three. The Arrest and

Booking Report indicates that the arresting officer, Officer I.R. Fields of the Jacksonville Sheriff's Office, personally observed Defendant commit these two offenses. First, as to Count One, Officer Fields observed Defendant in possession of a firearm because, while he attempted to handcuff Defendant, Defendant continually attempted to grab something out of his back pocket, which Officer Fields later discovered to be a firearm. As to Count Three, the Officer's detailed report shows that he personally observed Defendant's actions while Defendant attempted to resist him and Officer J. Kirkland. Because Officer Fields was an eyewitness to Count One and the victim of Count Three, he is clearly a material witness; that he was also an investigating or arresting officer does not change his status as a material witness. Ground One in its entirety is utterly without merit and is denied.

Resp. Ex. P at 114-17 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[14] In doing so, and upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of federal law, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). This claim is denied.

---

[14] In looking through the appellate court's affirmance to the trial court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

*Sub-Claim Two*

Davis alleges that the state knowingly and intentionally presented false testimony during trial, in violation of Davis' due process rights. Doc. 11 at 26. While not a product of clarity, Davis raised this claim in his state petition for writ of habeas corpus. Resp. Ex. O at 15-23. The trial court summarily denied the claim as follows:

> Second, in construed subclaim two, this Court believes Defendant seeks to argue that because the State had not obtained a sworn statement or testimony from material witness(es) when it filed its Information, the Information stating that sworn testimony had been received constituted a <u>Giglio</u>[15] violation. Defendant additionally argues that the State withheld testimony from the following material witnesses: J.M. Kirkland; I.R. Fields; Bruce Allen McGriff, Jr.; and Charleen Tutt.
>
> First, Defendant's allegations do not fall within the definition of <u>Giglio</u>[16]. First, the State did possess sworn testimony from material witnesses to support its charging information, as outlined <u>supra</u> in Ground One.[17] Second, Defendant has failed to establish that Bruce Allen McGriff, Jr. and Charleen Tutt are material witnesses to the three crimes charged in the initial information and the amended information, such that the sworn statements of Kenneth Lee and Chiquita Arnold would not suffice to support the charging document. To the extent Defendant seeks to argue the State committed a <u>Brady</u> violation and withheld evidence from the Defense, this Court adopts its reasoning in its Order entered on March 4, 2014, denying this claim

---

[15] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

[16] To establish a <u>Giglio</u> violation, Davis held the burden of proving: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. <u>Guzman v. State</u>, 868 So. 2d 498, 505 (Fla. 2003) (citing <u>Ventura v. State</u>, 794 So. 2d 553, 564-65 (Fla. 2001)).

[17] The "ground one" referenced by the trial court here is discussed in sub-claim one of Ground Three of this Order.

for relief.[18]

> Assuming arguendo that the State did not possess the sworn statements of Mr. Lee and Ms. Arnold prior to filing its information, these claims still fail. The Fourth District Court of Appeal recently held that "[Appellant's] post-conviction motion alleging that the state attorney failed to receive sworn testimony from a material witness before filing the information is one of numerous such frivolous motions this court has dealt with recently." Wilson v. State, 109 So. 3d 240, 241 (Fla. 4th DCA 2013). As such, this claim is per se frivolous and does not entitle Defendant to relief. Ground Two is denied.

Resp. Ex. P at 117-18. The First DCA per curiam affirmed the trial court's denial without issuing a written opinion. Resp. Ex. T.

To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[19] In doing so, and upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Davis' claim was neither contrary to nor an unreasonable application of federal law, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). This claim is denied.

---

[18] The trial court is referring to its order denying Davis' initial Rule 3.850. Resp. Ex. G at 130-53.

[19] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

### *Sub-Claim Three*

Davis asserts that the cumulative effective of trial counsel's errors amounted to ineffective assistance of trial counsel. Doc. 11 at 28. Respondents assert that this claim is not cognizable on federal habeas review. Resp. at 42. Liberally construed, it appears that Davis raised this claim in his state petition for writ of habeas corpus by briefly referencing cumulative effect within another separately pleaded ground. Resp. Ex. O at 29. Instead, of addressing the allegation of cumulative effect separately, the trial court summarily denied each individual claim of ineffective assistance of counsel. See generally Resp. Ex. P at 111-28.

Nonetheless, even assuming that this claim is cognizable and otherwise properly before the Court for consideration, it is still without merit. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Davis' individual claims of ineffective assistance of trial counsel have merit, Davis' cumulative error claim cannot stand. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There

being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Thus, Davis' claim for relief is due to be denied.

### D. Ground Five[20]

In Ground Five, presented in Davis' Supplemental Claims (Doc. 27), Davis seemingly alleges that he "attempted to re-open his postconviction appeal because the state postconviction order failed to conclusively refute his allegation of self-defense"; particularly, his claim that had counsel informed Davis of such a defense, he would not have entered a plea of guilty. Doc. 27 at 2. In his Supplemental Reply (Doc. 41), Davis clarifies that he is challenging the First DCA's January 11, 2017 order denying his petition for belated appeal, in which Davis alleged that the trial court failed to properly address his claim of ineffective assistance of counsel for failure to properly advise Davis that self-defense was a viable defense. See Doc. 41 at 2-3; see also Davis, Jr. v. State, No. 1D16-5521 (Fla. 1st DCA Jan. 11, 2017).

Respondents argue that this claim is not cognizable on federal habeas review. Doc. 37 at 3. The Court agrees. The Eleventh Circuit Court of Appeals holds that

> [f]ederal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir. 2004); see also Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), cert. denied, -- U.S. --, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment – i.e., the conviction itself – and thus

---

[20] Ground Four is addressed in Ground Two, Sub-Claim Six above.

> habeas relief is not an appropriate remedy." <u>Carroll</u>, 574
> F.3d at 1365.

<u>Alston v. Sec'y Fla. Dep't of Corr.</u>, 610 F.3d 1318, 1325-26 (11th Cir. 2010). Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991) (citations omitted). As such, federal habeas "does not lie for errors of state law." <u>Id.</u> at 67 (quotations omitted). At most, Davis asserts defects in state collateral proceedings, which do not undermine the legality of his convictions or sentences and do not state a basis for habeas relief. <u>See</u> <u>Alston</u>, 610 F.3d at 1325-26. Despite Davis' attempt to couch his claim in terms of due process, this Court may not review the claims because they are based exclusively on state law issues in collateral proceedings. <u>See</u> <u>Beier v. Butler</u>, No. 8:99-CV-754-T-27TBM, 2009 WL 189940, at *9 (M.D. Fla Jan. 23, 2009) (holding a petitioner's challenge to state appellate court's denial of motion for belated appeal not cognizable on federal habeas review). As such, this claim is without merit and is due to be denied.

### E. Ground Six

Davis appears to claim that his HFO sentences are illegal because he does not have the requisite prior felony convictions. Doc. 27 at 4. In support of his contention, Davis cites to section 775.084(1)(a)3, Florida Statutes. <u>Id.</u>

Section 775.084(1)(a)3 provides for two situations in which an HFO sentence is prohibited: (1) the current conviction for which the defendant is to be sentenced is a violation of section 893.13, Florida Statutes, relating to the purchase or the possession of a controlled substance; or (2) both of the prior predicate convictions are offenses

related to a violation of section 893.13 relating to the purchase or the possession of a controlled substance, regardless of the nature of the current offense for which the defendant is to be sentenced. See Woods v. State, 807 So. 2d 727, 728 (Fla. 1st DCA 2002).

Here, the prior predicate convictions that the state used to habitualize Davis were a 1998 conviction for aggravated assault and a 2008 conviction for possession of cocaine. Resp. Ex. A at 15. Further, none of the convictions for which Davis was sentenced in this case were for the possession of a controlled substance under section 893.13. Resp. Ex. A at 81. As such, Davis' HFO sentences are not illegal pursuant to section 775.084(1)(a)3. This claim is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.    Davis' Amended Petition (Doc. 11) and Supplemental Claims (Doc. 27) are **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.    If Davis appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall

serve as a denial of the motion.[21]

**DONE AND ORDERED** in Jacksonville, Florida this 5th day of April 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Eddie C. Davis, Jr., #306349
      Jennifer J. Moore, Esq.

---

[21] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

49